NOT DESIGNATED FOR PUBLICATION

No. 118,441

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JA-DEL, INC. d/b/a FIORELLA'S PRIVATE DINING AND CATERING,
*Appellee*,

v.

LEAH MARIE WINKLER f/k/a LEAH MARIE BALTZ,
*Appellee*,

and

JEFFREY BALTZ,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; DANIEL W. VOKINS, judge. Opinion filed January 11, 2019. Affirmed.

*Myndee M. Lee*, of Lee Law LLC, of Overland Park, for appellant.

*Deron A. Anliker* and *Andrew I. Spitsnogle*, of Duggan Shadwick Doerr & Kurlbaum LLC, of Overland Park, for appellee JA-DEL, Inc.

Before BUSER, P.J., ATCHESON, J., and WALKER, S.J.

PER CURIAM: Weddings are typically celebratory events bringing together invited friends and family of the loving couple to witness an exchange of vows and rings culminating in a declaration of marriage. After the ceremony, the newlyweds often host a reception for their guests. So it was in May 2016 for bride Leah Winkler and groom

1

Jeffrey Baltz. The law intrudes uneasily and almost callously into those special occasions when it comes to collecting unpaid debts for the celebrations. So, too, has it been for Winkler and especially Baltz.

THE LEGAL DISPUTE: A CATERER DOESN'T GET PAID

About three weeks before the wedding, Winkler signed a contract with JA-DEL, Inc., a business commonly known as Fiorella's Private Dining and Catering, to cater a reception for 120 guests at a cost of about $9,900. Although the contract called for payment in advance, that didn't happen. And JA-DEL didn't get paid after the wedding reception, either. So in August 2016, JA-DEL filed a Chapter 61 limited action in Johnson County District Court against Winkler for breach of contract and against both Winkler and Baltz on a theory of quantum meruit or unjust enrichment.

This litigation has lasted longer than the marriage. Winkler obtained an annulment of the marriage in late December 2016. In May 2017, Winkler settled with JA-DEL but never made any payments called for in the agreement. She then consented to a judgment against her in this case. Winkler has not since been an active participant in this litigation.

Baltz filed an answer in September 2016 denying any liability for the costs of catering the wedding reception. In March 2017, Baltz filed a motion for judgment on the pleadings, as provided in K.S.A. 2017 Supp. 60-212(c). Although this is a limited action, the district court did not address the procedural propriety of a motion to dismiss on the pleadings. See K.S.A. 2017 Supp. 61-2912 (K.S.A. 60-212 not included among specific provisions of Chapter 60 incorporated into Chapter 61). In the motion, Baltz argues that when a contract governs a transaction, quantum meruit or unjust enrichment cannot as a matter of law apply to that transaction. JA-DEL responded that the rule applies only to the parties to a contract, and Baltz never agreed to or ratified the catering contract.

2

At a hearing on August 5, 2017, the district court denied the motion for the reason JA-DEL advanced in its response. The district court then noted the case had been set for trial and asked for JA-DEL's opening statement as the plaintiff. The company's lawyer gave a detailed outline of the anticipated evidence. The district court then asked a few questions of the lawyer to clarify that the claim against Baltz rested on an unjust enrichment theory. By way of an opening statement, Baltz' lawyer essentially reiterated her position that the law prohibits unjust enrichment when an otherwise valid contract applies. She did not summarize any anticipated evidence. The district court asked the lawyer if Baltz' friends and family attended the reception and partook of the food JA-DEL provided. She agreed that was true but argued it was legally irrelevant because Baltz had nothing to do with selecting JA-DEL as the caterer and didn't sign the contract. The lawyer acknowledged the contract price represented fair value for the food and services JA-DEL provided for the reception.

JA-DEL's lawyer then suggested there was no need for a trial because the relevant facts were undisputed, so the case turned on whether unjust enrichment provided a means of recovery given those facts. Baltz' lawyer and the district court agreed with that characterization of the controlling issue. The district court then stated it "finds as a matter of law" no bar to an unjust enrichment claim against Baltz because he was not a party to the contract. The district court went on to explain how the circumstances of the wedding and the reception supported a recovery for JA-DEL on that theory. The district court concluded by entering judgment for JA-DEL against Baltz for $9,903.45 plus court costs and postjudgment interest.

Several weeks later, the district court filed a short journal entry confirming both the denial of Baltz' motion for judgment on the pleadings and the terms of the judgment for JA-DEL. Baltz filed a timely notice of appeal, and this court granted his motion to docket the appeal out of time.

3

On October 17, 2017, Winkler filed a notice in the district court that she had filed a petition for Chapter 7 relief in the United States Bankruptcy Court for the District of Kansas. The automatic bankruptcy stay precluded any further proceedings against Winkler on her consent judgment.

THE LEGAL ANALYSIS: UNJUST ENRICHMENT APPLIES TO THESE FACTS

*What We Review on Appeal*

At the outset, we face a record that isn't entirely clear on the procedural genesis of the judgment we have been asked to review. Neither side presented any evidence during the hearing. But in response to questions from the district court, the lawyers acknowledged the accuracy of key factual representations. And, with one exception, Baltz' lawyer really didn't dispute the content of the opening statement JA-DEL's lawyer made. Arguably, the district court treated that discussion as the equivalent of a stipulated factual record upon which it decided the dispute. Even then, however, we can't say for certain whether the district court considered the hearing to be a trial, albeit on undisputed facts, or on what amounted to Baltz' written motion for judgment on the pleadings and an oral cross-motion from JA-DEL. In its bench ruling, the district court never said, and the journal entry lent no clarity.

We perceive no unfair surprise or prejudice to either side, since there seemed to be agreement about the relevant facts. We, therefore, suppose the district court took the representations in the petition that Baltz admitted in his answer along with the undisputed factual representations developed at the hearing to be an agreed-upon statement of evidence and effectively rendered a trial judgment.

*Law of Unjust Enrichment*

Unjust enrichment is an especially flexible equitable doctrine that permits a party to recover the value of a benefit conferred on a second party when the second party retains the benefit under circumstances that either commonly would call for payment or would otherwise make retention of the benefit without compensation patently unfair. *Haz-Mat Response, Inc. v. Certified Waste Services Ltd.*, 259 Kan. 166, Syl. ¶ 6, 910 P.2d 839 (1996) ("The basic elements of a claim based on a theory of unjust enrichment are: [1] a benefit conferred upon the defendant by the plaintiff; [2] an appreciation or knowledge of the benefit by the defendant; and [3] the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value."); *City of Neodesha v. BP Corporation*, 50 Kan. App. 2d 731, 780, 334 P.3d 830 (2014) (necessary conditions for unjust enrichment include inequity of retaining benefit "without payment of its value"); *Jones v. Culver*, 50 Kan. App. 2d 386, 390, 329 P.3d 511 (2014) (same). The recited conditions have a certain circularity to them—unjust enrichment occurs when it would be unfair not to pay. But judicial application of the doctrine necessarily entails a fact-bound, case-specific determination that presumably offers clarity in a given case. *Haz-Mat Response,* 259 Kan. 166, Syl. ¶ 6 (retention without payment must be inequitable "under such circumstances" as the parties present); *City of Neodesha*, 50 Kan. App. 2d at 781-82; see Restatement (Third) of Restitution and Unjust Enrichment § 1, comment a (2011) (The "tradition" from which the Restatement grows "authorizes a court to remedy unjust enrichment wherever it finds it."). If the relevant historical facts are undisputed (and that's true here), applicability of equitable unjust enrichment presents a question of law. So we exercise unlimited review. *T.R., Inc. of Ashland v. Brandon*, 32 Kan. App. 2d 649, 655, 87 P.3d 331 (2004).

As between the parties to a contract, Kansas courts will not invoke unjust enrichment for the benefit of either party, since their rights and obligations should be

5

controlled by the agreement they have made. *Midwest Asphalt Coating v. Chelsea Plaza Homes*, 45 Kan. App. 2d 119, 123, 243 P.3d 1106 (2010); *Wolfert Landscaping Co. v. LRM Indus., Inc.*, No. 106,989, 2012 WL 5392143, at *4 (Kan. App. 2012) (unpublished opinion) ("[Q]uantum meruit is not available when an express contract addresses the obligations of the parties."). That reflects a common legal principle. See Restatement (Third) of Restitution and Unjust Enrichment § 2 (2011) (recognizing that "[a] valid contract defines the obligations of the parties as to matters within its scope, displacing to that extent any inquiry into unjust enrichment"). Baltz essentially offers an overly generalized statement of that principle as the linchpin of his defense. With that approach, he incorrectly expands the prohibition on unjust enrichment from the parties to the contract to anyone or anything associated with the contract. There is no such categorical bar. So Baltz falters in that defense. Based on the undisputed facts, he was not a party to the catering contract.[*]

[*]JA-DEL's lawyer offered the one disputed representation to the district court: He submitted that the morning of the wedding and the reception, Baltz spoke to a manager at JA-DEL by telephone and provided a credit card number to cover the catering costs ostensibly because Winkler failed to make advance payment. According to the lawyer, the credit card charge was, at some point, declined. At the hearing, Baltz' lawyer submitted no such conversation took place between Baltz and any representative of JA-DEL. In its extended bench ruling, the district court never relied on the disputed telephone call or otherwise suggested Baltz had orally agreed with JA-DEL to pay the catering bill. We similarly discard that representation, and we think suggestions about how that fact, if proved, might affect the outcome are legally irrelevant.

In his dissent, Judge Buser suggests Baltz' tender of his credit card would have furnished a "special circumstance" supporting JA-DEL's claim for unjust enrichment. We see it differently based on the representation to the district court. Baltz' presentation of his credit card number arguably amounted to an act constituting acceptance (or ratification) of the catering contract and an unqualified agreement to pay the amount due. A party accepts an offer through an objective manifestation of assent or agreement to the offer. *Southwest & Assocs., Inc. v. Steven Enterprises*, 32 Kan. App. 2d 778, Syl. ¶ 2, 88 P.3d 1246 (2004). Unless an offer requires acceptance be given in a certain way, no particular words or acts are necessary as long as the offeree's overt agreement is apparent. Conduct, such as tendering a means of payment, is sufficient. *Columbia Weighing Machine Co. v. Vaughan*, 123 Kan. 474, 255 P. 973 (1927) ("[A]cceptance may be shown by any act or conduct clearly evincing an intention to accept the offer made."); *Rosen v. Hartstein*, No.

6

108,479, 2014 WL 278717, at *3 (Kan. App. 2014) (unpublished opinion) (words or conduct manifesting assent to offer constitutes acceptance resulting in contract). Here, of course, payment was the performance JA-DEL bargained for. Assuming Baltz provided his credit card to JA-DEL the morning of the reception, they entered into a contract for the catering. If so, JA-DEL could no longer rely on unjust enrichment as an equitable ground for relief. Since that was the only claim the company asserted against Baltz, the district court properly would have entered judgment for him.

The inapplicability of Baltz' defense, however, does not mean JA-DEL automatically wins. JA-DEL must still point to evidence warranting equitable relief to avert an unjust enrichment of Baltz. As we explain, in the narrow and quite unusual circumstances of this case, JA-DEL has done so. We chart a lonely course to that conclusion. Despite our best efforts, we have found no sufficiently analogous case authority to guide our decision. The parties' search for precedent was no more successful. In his dissent, Judge Buser chides us for ruling in a way "without legal precedent." Slip op. at 18. But he has offered no factually comparable authority rejecting what we have done.

*Of Weddings, Receptions, and Such*

A wedding is, almost needless to say, a joint undertaking, as is the marriage it initiates. We dispense with some treacly commentary on the bond of love between the betrothed celebrated in the wedding and carried on in the resulting matrimonial union. The point is a wedding requires two willing participants of a like mind. The product of their participation is a legally recognized relationship (and often an ecclesiastically blessed one) of uniquely personal intimacy combined with defined societal benefits and burdens, such as tax preferences, authority to make decisions as next-of-kin for a debilitated spouse, and a right of inheritance. As we have indicated, weddings often have celebratory adjuncts including receptions—parties that serve dual social functions of affording invited guests an opportunity to fete the newlyweds and reciprocally allowing the newlyweds to show their gratitude to those guests for their attendance.

7

The undisputed facts establish Baltz' family and friends attended the reception and enjoyed the hospitality extended to them. Baltz knew that Winkler had contracted with JA-DEL to cater the event. And he reasonably understood that JA-DEL expected to be paid for the catering. Following the reception, Baltz learned that JA-DEL had not been paid.

Here, the circumstances permit JA-DEL to recover from Baltz the reasonable cost of the catering—agreed at the hearing to be the contract price. He received a benefit in the form of food and services for his wedding guests, and he knew the caterer was supposed to be compensated for what it provided. The benefit to Baltz takes on an equitable cast of unjust enrichment because Winkler, the bride-to-be, made the business arrangements for the catering. Baltz and Winkler mutually shared the resulting benefit. Nothing suggests Winkler intended to make a gift of the catering to Baltz. Apart from exchanging rings during the ceremony, couples typically do not exchange wedding gifts with each other. And, more to the point here, JA-DEL had no reason to think Winkler acted with some sort of donative intent with respect to Baltz. We conclude that on the evidence presented, it would be inequitable for Baltz to realize the benefit from the catering of his wedding reception without reasonably compensating JA-DEL after Winkler avoided her contractual obligation to pay.

Contrary to Judge Buser's suggestion, we have not conjured up some mythical—or in his word "unmoored"—world of weddings and related merriment to decide this case. See slip op. at 13. We have relied on the facts to which the parties, through their lawyers, agreed at the district court hearing. And we have considered the inferences JA-DEL reasonably would have drawn from those circumstances given the nature of weddings, receptions, and such. The very nature of those events reflects the "special circumstance" Judge Buser hunts for in weighing equitable relief. Nothing we know about Baltz and Winkler's wedding and reception marked them as somehow distinctly different from

8

other weddings and receptions. JA-DEL certainly had no reason to view them that way in making the catering arrangements.

We offer these additional observations to reinforce our reasoning and to underscore the narrowness of our ruling:

• We express no opinion on what steps, if any, one party to a contract might have to go through to recover from a breaching party before resorting to an equitable claim of unjust enrichment to obtain payment from a nonparty who, nonetheless, benefited. Neither JA-DEL nor Baltz has addressed the issue. And JA-DEL had gone to some lengths to recover from Winkler, though unsuccessfully.

• JA-DEL could have done more contractually to secure payment. The company could have enforced the provision in the contract with Winkler requiring she pay in advance of the reception. It didn't. The company could have required a second party sign the contract as a guarantor of payment. It didn't do that, either. But those failures do not amount to so-called "unclean hands"—distinctly unfair behavior—that would bar equitable relief. See *Bouton v. Byers*, 50 Kan. App. 2d 34, 61, 321 P.3d 780 (2014) (party's own inequitable conduct typically bars its claim for relief based on equitable remedies).

• Baltz has suggested that a judgment against him would, by extension, allow JA-DEL or a similarly situated service provider to sue the guests at the wedding reception or a comparable party on an unjust enrichment theory. We think not. At least a couple of reasons support our conclusion. The guests would not be receiving a benefit directly from the caterer. Rather, the benefit would derive from the invitation to the reception and, thus, from the persons doing the inviting. More basically, perhaps, a guest at a reception would not expect to be asked to pay later for gratuitously furnished food or beverages because the host stiffed the supplier. A contrary proposition runs counter to accepted social

9

custom and, so far as we can tell, appears to be without legal support. Nothing in the doctrine of unjust enrichment would render it inequitable for the guests to enjoy the refreshments on the assumption no unspoken condition subsequent might later be invoked to require them to pay for what they had consumed.

We put to one side the myriad impracticalities of such litigation. The supplier presumably would have to sue each guest individually. We doubt a class action would be appropriate, and it would have other procedural obstacles. Would a guest be liable for a per capita share of the reasonable value of what the supplier provided or only a share corresponding to what he or she actually partook? What about the guest who claimed to have eaten or drunk nothing at the event? We dispense with further hypotheticals that might arise if the supplier were a band or a florist providing what amounts to an indivisible benefit.

• Had Winkler's parents entered into the contract with JA-DEL to cater the wedding reception, we doubt an unjust enrichment claim would lie against Baltz. In that circumstance, the parents would to all outward appearances intend to confer a gift of the catering on both Baltz and Winkler. And JA-DEL would have no reason to think otherwise. Baltz and Winkler would be intended donative beneficiaries of the catering contract. See Restatement (Second) of Contracts § 302 (1981). We suppose unjust enrichment would be inapplicable because Baltz and Winkler would have certain rights, particularly against JA-DEL, under the contract as intended third-party beneficiaries. Restatement (Second) of Contracts § 302 (1981). So the contract would govern the relationship between JA-DEL and Baltz.

Even if that were not the case, the donative character of the object of the contract—catering of the newlyweds' reception—would render a claim for the value of the services against the newlyweds outside the equitable reach of unjust enrichment. Newlyweds have no reasonable expectation that they might be dunned for the value of a

10

wedding gift should the giver fail to pay for it. Again, the law and societal norms support that expectation and run against any contrary notion. We see nothing in the nature of the gift—food and drink for a reception rather than a pressure cooker—that demands a different result. But, as we have said, the contract Winkler made for catering the wedding reception is not suffused with donative intent toward Baltz, since a wedding and its flourishes entail a coordinated undertaking of the couple. There would have to be clear evidence to the contrary in a particular case to deviate from those common understandings.

• We recognize that one spouse typically cannot be held liable for the debts or on the contracts of the other spouse. Cf. *St. Francis Regional Med. Center, Inc. v. Bowles*, 251 Kan. 334, 340-41, 836 P.2d 1123 (1992) (recognizing common-law doctrine that one spouse may be liable to pay for limited "necessaries," such as required medical care, the other spouse has contracted to receive). Romantic notions aside, we doubt a wedding reception falls within the narrow exception to that rule for necessaries. So Baltz could not have been liable to JA-DEL on the contract itself. Conversely, the unique circumstances attendant to a wedding and the relationship between the two to be married do permit a claim for unjust enrichment when one or the other contracts for goods or services for their mutual benefit in arranging the ceremony and any related celebratory gathering. Such is the flexibility of equitable relief and the doctrines that permit it.

• Finally, the Restatement of Restitution lends support to our conclusion. See Restatement (Third) of Restitution and Unjust Enrichment § 25 (2011). Section 25 recognizes a rule permitting one party to a contract to recover against a nonparty if that party has provided a promised performance to the nonparty, has not been compensated in breach of the contract, and the nonparty would otherwise be unjustly enriched. The Restatement authors drafted the rule primarily to afford some equitable protection to a subcontractor confronted with a defaulting general contractor or a similar arrangement in which a property owner receives improvements without contracting directly with the

11

party providing the benefit. But the rule is not confined to those situations. Restatement (Third) of Restitution § 25, comment a. It is, however, subject to a number of restrictions. For example, unjust enrichment would not lie if the property owner had already paid the general contractor or if the subcontractor retained a "viable" contract claim against the general contractor. Comment b.

Filtered through the particular facts here, the rule in Restatement (Third) of Restitution § 25 appears to embrace JA-DEL's claim against Baltz, and none of the exceptions to or limitations on the rule seem to apply. The Restatement, however, is no more than persuasive authority.

*Conclusion*

We see no worthwhile purpose in extending this opinion with a recapitulation of our analysis. For the reasons we have outlined, the district court correctly entered judgment for JA-DEL and against Baltz for the value of the food and other catering services it provided at his wedding reception.

Affirmed.

\* \* \*

BUSER, J., dissenting:  I dissent. At the outset, I agree with my colleagues that two elements of an unjust enrichment claim—Jeffrey Baltz received a benefit from JA-DEL and had knowledge of that benefit—were shown at trial. See *Haz-Mat Response, Inc. v. Certified Waste Services Ltd.*, 259 Kan. 166, Syl. ¶ 6, 910 P.2d 839 (1996). I disagree, however, that the third element—acceptance or retention by Baltz of the benefit was "under such circumstances" as to make it inequitable for him to retain the benefit without payment of its value. 259 Kan. 166, Syl. ¶ 6.

12

I have two concerns. First, given the absence of facts proffered at trial, JA-DEL wholly failed to prove that Baltz retained the benefit "under such circumstances" that justified imposition of the equitable doctrine. Second, unmoored by the lack of facts and circumstances, my colleagues fashion a new aspect of the law of unjust enrichment based on a notion of the custom and practice of wedding reception planning. I believe this broad, generalized notion is without legal or societal precedent and contrary to well-established Kansas law that emphasizes the importance of proof of special circumstances in every individual instance wherein a plaintiff claims the doctrine of unjust enrichment should be applied. I will address my two concerns separately.

The majority candidly acknowledges the uncertainty about what constituted the factual basis for the trial court's judgment ("there *seemed* to be agreement about the relevant facts"). (Emphasis added.) Slip op. at 4. My colleagues then speculate: "We, therefore, *suppose* the district court took the representations in the petition that Baltz admitted in his answer along with the undisputed factual representations developed at the hearing to be an agreed-upon statement of evidence and effectively rendered a trial judgment." (Emphasis added.) Slip op. at 4.

While the majority properly notes of the tenuous nature of the factual basis considered by the district court, I believe their concern is seriously understated. Baltz made no admissions in his answer, other than to concede personal jurisdiction and venue. Due to insufficient information, he denied that Leah Winkler entered into a contract with JA-DEL to cater the wedding reception or that she agreed to pay JA-DEL $9,903.45 for goods and services or that JA-DEL fully performed under the contract. Baltz also denied that JA-DEL conferred benefits on the couple, or that he had an appreciation or knowledge of these benefits, or that he accepted and retained any benefits.

Moreover, in his answer, Baltz designated an affirmative defense:

13

"The Petition, in whole or in part, fails to state a cause of action against Mr. Baltz upon which relief may be granted. Mr. Baltz did not knowingly accept the services of [JA-DEL] and did not directly or impliedly represent to [JA-DEL] that it would be compensated. Neither did Mr. Baltz impliedly promise to pay for any services rendered by [JA-DEL]."

During his opening statement, counsel for JA-DEL highlighted the importance of these disputed facts in Baltz' answer: "The only reason we are here today is that Jeff Baltz is incredibly claiming that he did not knowingly accept the services of [JA-DEL] and did not directly or impliedly represent that it would be compensated. That's a quote from Jeff Baltz's answer, Judge." Based on his answer, it is apparent that Baltz controverted all of JA-DEL's allegations that comprised the three elements of JA-DEL's cause of action predicated on the theory of unjust enrichment. Of particular importance, Baltz disputed that he represented to JA-DEL that it would be compensated or that he promised to pay for the catering.

During opening statements, the parties discussed the apparent facts and disputed facts pertaining to Winkler's contractual agreement to retain JA-DEL's catering services while the trial court interposed questions to clarify the facts.

In JA-DEL's opening statement, counsel pointedly asserted, "On the morning of the wedding, Jeff Baltz personally provided [JA-DEL] his credit card information. When the card declined, [JA-DEL] left Mr. Baltz a voicemail to let him know there were issues with the card." During this opening statement, the trial court confirmed with JA-DEL's counsel that the catering contract was signed by Winkler in the amount of $9,903.45.

At the conclusion of Baltz' opening statement, the following colloquy occurred:

"THE COURT:  What is the factual dispute?

14

"MS. MYNDEE LEE:  The factual—my client—the—the factual dispute *that my client will—would—if he were testifying—if I can say that—is just simply that that wasn't him that called with the credit card number*.

"*He was very divorced from that—from the catering situation*. Um, and that he in fact—*he didn't know how much the catering contract was* that his now—well, technically never wife since they were—the marriage was annulled.

"But that *he didn't have anything to do with that piece of it. That's the only dispute*, Your Honor.

"THE COURT:  Well—

"MS. MYNDEE LEE:  So—

"MR. ANDREW SPITSNOGLE:  —but he was there. It was his—

"MS. MYNDEE LEE:  We don't—

"THE COURT:  —wedding.

"MS. MYNDEE LEE:  —object that—don't—we, we understand that.

"THE COURT:  Okay? He had his guests there.

"MS. MYNDEE LEE:  We understand that.

"THE COURT:  His family there.

"MS. MYNDEE LEE:  Understand.

"THE COURT:  The caterer was [JA-DEL].

"MS. MYNDEE LEE:  Yes.

"THE COURT:  There was food there.

"MS. MYNDEE LEE:  Yes.

"THE COURT:  Everyone ate the food.

"MS. MYNDEE LEE:  Yes.

"THE COURT:  There's no dispute that the food was bad or anything like that?

"MS. MYNDEE LEE:  No, Your Honor, *the only dispute is just that he wasn't involved in the process of hiring the caterer*. So—

"THE COURT:  Yeah, but in—

"MS. MYNDEE LEE:  —if you—if you can rule based on that—

"THE COURT:  —isn't that quantum meruit?" (Emphases added.)

The trial court clarified with Baltz' counsel that there was no factual dispute that JA-DEL supplied $9,903.45 in food and services. Baltz' counsel agreed, but added:

"[MS. MYNDEE LEE:] . . . other than [Baltz] wanted to make it known that—

"THE COURT: Sure.

"MS. MYNDEE LEE: —*he wasn't involved in the process of hiring the caterer so—*

"THE COURT: Sure, no, I understand that.

"Well, I don't think we need a trial. You know, I don't see—

"MS. MYNDEE LEE: I, I would agree with that—

"THE COURT:—factual dispute.

"MS. MYNDEE LEE: Your Honor. If it's a—

"THE COURT: But I think we're just here to make the legal argument as to whether the quantum theory—meruit theory applies to him or not." (Emphasis added.)

Based on the pleadings, the parties' opening statements, and the colloquy with the trial court, it is readily apparent that a significant factual dispute existed regarding whether Baltz played any role in the catering transaction, and if so, the nature and extent of that involvement—especially with regard to payment.

According to Baltz, he was not involved with hiring JA-DEL, did not know much about the catering contract, never represented to JA-DEL that it would be compensated, never promised to pay for the catering—in particular, specifically denying that he ever called JA-DEL on the morning of the wedding to provide his credit card number for payment of the catering.

On the other hand, JA-DEL's view of the facts was that on the morning of the wedding Baltz personally provided JA-DEL with his credit card information. When the credit card was declined, the caterer informed Baltz of this nonpayment by leaving him a voicemail.

16

My colleagues resolve this factual dispute by noting:

"In its extended bench ruling, the district court never relied on the disputed telephone call or otherwise suggested Baltz had orally agreed with JA-DEL to pay the catering bill. We similarly discard that representation, and we think suggestions about how that fact, if proved, might affect the outcome are legally irrelevant." Slip op. at 6.

I agree with the majority that it does not appear the trial court considered this important factual dispute in concluding, as a matter of law, that quantum meruit applied under the meager proffered facts. In its ruling granting judgment in favor of JA-DEL and against Baltz, the district court informally made the following factual findings in support of its legal conclusion:

"What we have here is your wedding. Granted, it's Ms. Winkler's wedding as well. But it's your guys' wedding. You invited guests.

"Now, could they make a claim against all 20 (sic) guests, no. Okay? Not at all. They're—they were there as guests.

"But you were there for your wedding, with Ms. Winkler and they provided the catering services. They provided the food for all the guests that you had there.

"Those guests, because there's no factual dispute, included your friends and family as well as Ms. Winkler's friends and family.

"But everyone there for your wedding, received the benefit and you therefore, received the benefit by having the enjoyment of that day with your friends and family enjoying the food from—being catering by [JA-DEL].

"And obviously you could've stopped it immediately by when they came, you could've said hey, no, I didn't sign any [contract], she doesn't have the money for this.

"I'm not paying for it. You need to go home, okay?

"Well, that didn't happen because there's no factual dispute that everyone enjoyed this—the barbeque.

"And you know, you can't give the barbeque back. It's already been consumed."

17

In short, the trial court and my colleagues base their legal conclusion on the simple, basic facts that Winkler contracted with JA-DEL to cater the wedding reception for the couple, JA-DEL performed on the contract, family and friends of Winkler and Baltz received the benefits of the catered reception, and Winkler did not pay the agreed-upon contract price of $9,903.45. Given these proffered facts, I discern no circumstances that warrant the application of the doctrine of unjust enrichment.

Ironically, the disputed fact of whether Baltz became involved in the catering plans or made an offer to pay JA-DEL upon learning that Winkler had not paid for the catering in advance as agreed-upon, if true, may have provided "such circumstances" to justify imposition of the equitable remedy. Unfortunately, the truth of that disputed fact was not resolved prior to entry of the judgment against Baltz.

In summary, given the absence of material facts proffered at trial, I would hold that JA-DEL failed to prove that Baltz retained the catering benefit "under such circumstances" that justified imposition of the unjust enrichment doctrine.

Next, I disagree with my colleagues that, in the absence of particularized case facts, we should create a new facet of the law of unjust enrichment based on a notion of the custom and practice of wedding reception planning. This new statement of Kansas law provides that "the unique circumstances attendant to a wedding and the relationship between the two to be married do permit a claim for unjust enrichment when one or the other contracts for goods or services for their mutual benefit in arranging the ceremony and any related celebratory gathering." Slip op. at 11.

I have several concerns about this statement of law. First, as best as I can determine, this holding is without legal precedent in Kansas or any other state. Second, this statement of law is based upon my colleagues' view of wedding reception planning that has an unknown basis in our diverse society. For example, the majority states that "a

18

wedding and its flourishes entail a coordinated undertaking of the couple." Slip op. at 11. As a result, "There would have to be clear evidence to the contrary in a particular case to deviate from those common understandings." Slip op. at 11.

I do not know the basis for my colleagues' common understanding. In my experience, there are innumerable ways to plan a wedding reception and innumerable ways for a variety of people to pay for it. In this case, Baltz asserted that he was not involved in the process of hiring the caterer, signing the contract, or providing any indication that he would pay all or a portion of the debt. These very case facts, if true, challenge the "common understanding" that Baltz and Winkler had a coordinated undertaking with regard to catering the wedding reception.

In my view, rather than predicate a rule of law based on a speculative and uncertain common understanding of wedding reception planning, it would be preferable to follow well-established Kansas precedent as accurately cited by my colleagues: "[J]udicial application of the doctrine necessarily entails a fact-bound, case-specific determination that presumably offers clarity in a given case. *Haz-Mat Response,* 259 Kan. 166, Syl. ¶ 6 (retention without payment must be inequitable 'under such circumstances' as the parties present)." Slip op. at 5.

In other contexts, Kansas courts have discussed whether an unjust enrichment claim may lie against a third-party beneficiary. In *Haz-Mat*, our Supreme Court analyzed whether a subcontractor could successfully assert an unjust enrichment claim against a property owner for services rendered when the subcontractor was not in contractual privity with the property owner. The Supreme Court in *Haz-Mat* stated: "We do not suggest that privity must be established or that a promise by the owner must be established in order for the plaintiff to have an unjust enrichment claim, but there must exist such *special circumstances* to warrant such an action." (Emphasis added.) 259 Kan. at 179.

From *Haz-Mat*, our Supreme Court established this rule of law: "An essential prerequisite to unjust enrichment liability is the acceptance by the owner (the one sought to be charged) of benefits rendered under such circumstances *as reasonably notify the owner that the one performing such services expected to be compensated therefor by the owner.*" (Emphasis added.) 259 Kan. 166, Syl. ¶ 9. Restated in the context of the case on appeal, this rule of law would provide: An essential prerequisite to unjust enrichment liability is the acceptance by Baltz of catering services rendered under such circumstances as reasonably notify Baltz that JA-DEL expected to be compensated by Baltz.

Applying this rule of law to the case on appeal focuses the analysis on the special circumstances of whether Baltz accepted JA-DEL's catering services with reasonable notification that JA-DEL expected payment from Baltz. Of course, as argued by JA-DEL, the telephone call with Baltz wherein he proffered a credit card for payment of the bill to JA-DEL on the morning of the wedding could constitute special circumstances warranting imposition of the unjust enrichment doctrine. On the other hand, given that the district court and my colleagues did not base their legal conclusion on Baltz' offer of payment, there is no evidence to suggest that Baltz had anything to do with the wedding reception planning, contracting with JA-DEL for catering, or accepting the catering services with notice that JA-DEL expected him to pay for the bill.

In closing, I believe my colleagues' conclusion of law is contrary to well-established principles of unjust enrichment which are predicated—not on notions of how a typical couple usually plans and pays for their wedding reception—but on individual case facts presented at trial which focus on whether special circumstances exist to justify holding one individual legally responsible for the contractual debt incurred by another.

20

I would reverse and remand for entry of judgment against JA-DEL and in favor of Baltz.